Ritchie Capital Management, L.L.C.,
Ritchie Capital Management, LTD.,
Ritchie Special Credit Investments, LTD
Rhone Holdings II, LTD, Yorkville
Investment I, L.L.C., and Ritchie
Capital Structure Arbitrage Trading, LTD.

   Plaintiffs,

v.                   **ORDER**

U.S. Bank National Association,

   Defendant.

   Gregg M. Fishbein, Esq. and Kate M. Baxter-Kauf, Esq. of Lockridge Grindal Nauen P.L.L.P. 100 Washington Avenue South, Suite 2200, Minneapolis. MN 55401, attorneys for plaintiff.

   Richard G. Wilson, Esq. of Maslon LLP, 3300 Wells Fargo Center, 90 South 7th Street Suite 3300, Minneapolis, MN 55402, attorneys for defendant.

   This matter is before the court upon the motion to dismiss by defendant U.S. Bank National Association. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

   This business dispute arises out of a multi-billion dollar Ponzi scheme orchestrated by Tom Petters and committed in part using US Bank accounts. The scheme collapsed in 2008, and Petters was convicted by a jury and sentenced to fifty years' imprisonment.

See United States v. Petters, 663 F.3d 375, 378 (8th Cir. 2011). Plaintiffs Ritchie Capital Management, LLC and related entities[1] (collectively, Ritchie) allege that US Bank knowingly assisted Petters in operating the scheme, causing damages in excess of $157 million. Am. Compl. ¶ 1.

I.  **The Purchase Order Financing Scheme**

Petters, through his company Petters Company, Inc. (PCI), purported to operate a "diverting" business through which PCI purchased bulk quantities of electronic merchandise from vendors at below wholesale prices, and then sold the merchandise to discount retailers at a substantial profit. Id. ¶¶ 2, 18. To finance the alleged purchases, Petters, PCI, and Petters Capital, Inc. sold high-yield promissory notes to lenders, secured by the purchase orders. Id. ¶ 19. PCI then used the sale proceeds to pay off the promissory notes with interest.

In 2002, Petters and his affiliates formed Palm Beach Finance Partners, LP (Palm Beach Finance) and PBFP Holding, LLC. Id. ¶ 21.[2] In 2003, PBFP Holding began selling promissory notes on behalf of Petters to Palm Beach Finance. Id. ¶ 22. Palm Beach

---

[1] Plaintiffs include Ritchie Capital Management, LLC; Ritchie Special Credit Investments, Ltd.; Rhone Holdings II, Ltd.; Yorkville Investments I, LLC; and Ritchie Capital Management, Ltd.

[2] Petters later formed two other entities with similar names, Palm Beach Finance Holdings II, LLC and Palm Beach Finance II, LP. Am. Compl. ¶ 24. These entities served the same purpose as Palm Beach Finance and PBFP Holding, and as a result, the court refers only to the entities formed in 2002.

2

Finance purchased the notes with funds that were loaned by Palm Beach Offshore, Ltd., a private investment company. Id. ¶ 24; Wilson Decl. Ex. 10, at 6. Palm Beach Offshore was in turn financed through private investors. Am. Compl. ¶ 27.

As is well known by now, the diverting business operated by Petters was a sham. PCI neither purchased merchandise from vendors, nor sold any merchandise to retailers. Instead, Petters used forged purchase orders to solicit financing for the scheme, and used funds from new investors and lenders to pay off previously issued promissory notes. Id. ¶ 3.

**II. US Bank's Involvement in the Scheme**

To facilitate the purchase order scheme, Petters and his affiliates maintained a number of accounts with US Bank. Id. ¶¶ 4, 22-24. In pertinent part, US Bank managed a "Direct Payment System" that transferred funds through a "Collateral Account." Id. ¶ 27, 36. Under the Direct Payment System, PCI would request a loan from either PBFP Holding or individual lenders, and issue a corresponding promissory note. Id. ¶ 36. US Bank would then wire funds from the Collateral Account to a vendor, who would provide the merchandise to a retailer. Id. The retailer would pay for the goods by making a wire transfer to the Collateral Account or by issuing a check to a "Lockbox Account" that was connected to the Collateral Account. Id. The funds would then be distributed from the Collateral Account to the lender, with the remainder going to

PCI. Id.

Because the purchase order financing scheme was a sham, however, no retailers actually sent payments to the Collateral Account. Instead, proceeds from the fabricated sales came from PCI, with funds that PCI received through the issuance of new promissory notes. Id. ¶ 40. Ritchie alleges that US Bank knew the payments to the Collateral Account were coming from PCI rather than the retailers. Id. ¶ 8. Despite this alleged knowledge, US Bank complied with instructions to alter wire transfer documents, bank statements, and "receipt of funds" entries to show that the retailers were providing the payments. Id. ¶¶ 8, 42-45, 65-66, 96-97. US Bank also allegedly "assured PCI's lenders and investors that the direct payment system was being properly followed, maintained and operated." Id. ¶ 38.

To solicit financing for the scheme, Palm Beach Offshore issued offering circulars to prospective subscribers, which explained the diverting business and the Direct Payment System. Id. ¶ 27; Wilson Decl. Ex. 10. Ritchie alleges US Bank knew that certain representations made in the offering circulars were false, and that investors relied on those representations to ensure that the Direct Payment System would protect their funds from interference by third parties. Am. Compl. ¶¶ 30-33.

**III. The Polaroid and PGW Loans**

According to the complaint, in January 2008, "an agent for

4

Petters approached Ritchie" to make a short-term loan secured by the assets of the Polaroid Holding Company, an entity owned by Petters Group Worldwide, LLC (PGW). Id. ¶ 46. "Petters and representatives of [PGW]" allegedly told Ritchie that the loan would be used to pay $31 million owed under a credit facility that Polaroid had with JP Morgan. Id. They also sought $150 million for a bridge loan until Polaroid could obtain permanent financing. Id. ¶ 47. From February to May 2008, Ritchie loaned PGW and Petters approximately $189 million, which was allegedly used to pay down Polaroid's debt to JP Morgan, repay debts owed on promissory notes issued under the purchase order financing scheme, subsidize the operations of Petters-controlled companies, and fund Petters' extravagant lifestyle. Id. ¶¶ 3, 48.

For example, on February 1, 2008, Ritchie wired $31 million under a promissory note issued by PGW and Petters to an account at M&I Bank that was held in PCI's name. Id. ¶ 53. That same day, three transfers were made from the M&I Bank account to an account at US Bank. Id. ¶ 54. The next business day, US Bank made three transfers in the same amounts to the Collateral Account, and falsely described the funds as being received from merchandise retailers for application to promissory notes issued by PBFP Holding. Id. ¶ 56. Similar transfers were made from Ritchie to Petters-controlled accounts in March and May 2008. Id. ¶ 71. Ritchie alleges that, "[b]ut for US Bank's knowing and substantial

5

assistance to Petters and Petters-controlled entities" in operating the purchase order scheme and the Direct Payment System, Ritchie would not have made its loans. Id. ¶ 73.

On September 23, 2014, Ritchie filed a complaint against US Bank in New York state court, alleging (1) fraudulent conveyance,[3] (2) aiding and abetting fraud, (3) conspiracy to commit fraud, and (4) unjust enrichment. US Bank removed, and on April 10, 2015, the action was transferred to this district. ECF No. 19. US Bank now moves to dismiss.

**DISCUSSION**

**I. Standard of Review**

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual

---

[3] Ritchie also brought a claim for aiding and abetting fraudulent conveyance, but voluntarily dismissed the claim in response to this motion. See Pl.'s Opp. Mem. at 3 n.1.

6

allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside of the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). In addition to the complaint, the court refers to pleadings in other Petters-related actions involving Ritchie Capital, which are matters of public record.

**II. Statute of Limitations**

US Bank first argues that Ritchie's claims are time-barred, because this action was filed more than six years after Ritchie issued its loans to Petters. Under New York law,[4] actions sounding

---

[4] "The statute of limitations from the transferor court governs diversity cases transferred to another federal venue." Thorn v. Int'l Bus. Machs., Inc., 101 F.3d 70, 72 (8th Cir. 1996). Under New York's borrowing statute, a claim must be timely under both New York law and the law of the state where the claim accrued. N.Y. C.P.L.R. § 202. US Bank argues that Ritchie's claims accrued in Illinois, because it is the principal place of business for all plaintiffs. See Soward v. Deutsche Bank AG, 814 F. Supp. 2d 272, 278 (S.D.N.Y. 2011) (stating that claims alleging economic harm accrue at a company's place of residence). Illinois applies a five-year statute of limitations for fraud-based and unjust

7

in fraud must be commenced within six years "from the date the cause of action accrued" or two years "from the time the plaintiff ... discovered the fraud, or could with reasonable diligence have discovered it[,]" whichever is greater. N.Y. C.P.L.R. § 213(8). This limitations period applies to all of Ritchie's claims. See Koch v. Christie's Int'l, PLC, 699 F.3d 141, 154 (2d Cir. 2012) (aiding and abetting fraud and conspiracy to defraud); State Farm Mut. Auto. Ins. Co. v. Rabiner, 749 F. Supp. 2d 94, 103-04 (E.D.N.Y. 2010) (unjust enrichment); Miller v. Polow, 787 N.Y.S.2d 319, 320 (N.Y. App. Div. 2005) (fraudulent conveyance).[5]

Ritchie alleges that it made loans to Petters and PGW in February, March, April, and May 2008. See Am. Compl. ¶¶ 50, 53, 71. This action was not commenced until September 23, 2014, more than six years later. ECF No. 1, Ex. A. The claims are therefore

---

enrichment claims, and a four-year limitations period for fraudulent conveyance claims. See McMahan v. Deutsche Bank AG, 938 F. Supp. 2d 795, 802 (N.D. Ill. 2013); Richards v. Burgett, Inc., No. 10-7580, 2011 WL 6156838, at *4 (N.D. Ill. Dec. 12, 2011); Salisbury v. Majesky, 817 N.E.2d 1219, 1221-22 (Ill. Ct. App. 2004). Because Ritchie's claims are untimely under New York's longer limitations periods, the court will not address the timeliness of the claims under Illinois law.

[5] Ritchie asserts claims for actual and constructive fraudulent conveyance. Am. Compl. ¶ 85. Fraudulent conveyance claims based on actual fraud are subject to the same limitations period as other fraud-based claims, while fraudulent conveyance claims based on constructive fraud are subject to a six year statute of limitations with no two-year discovery rule. See Miller, 787 N.Y.S.2d at 320 (actual fraud); Analogic Corp. v. Manuelian, No. 12-1428, 2014 WL 1330774, at *3 (E.D.N.Y. Mar. 31, 2014) (constructive fraud).

time-barred under their respective six-year limitations periods. Ritchie argues, however, that the claims could be timely under New York's two-year discovery rule, because it is unclear at this stage when US Bank's involvement in the fraud could have reasonably been discovered. Specifically, Ritchie argues that stay orders issued in Petters' receivership and bankruptcy proceedings prevented Ritchie from accessing documents that would have revealed US Bank's participation at an earlier time. See Fishbein Decl. Ex. C, at 19 (prohibiting any "action that would interfere with the exclusive jurisdiction of this Court over the assets or documents of Defendants").

The point at which Ritchie could have reasonably discovered US Bank's involvement in the scheme is irrelevant to whether its claims are time-barred. The two-year discovery period under New York law begins to run when a plaintiff could have discovered "the fraud," not an alleged accomplice's participation in the fraud. See N.Y. C.P.L.R. § 213(8). The complaint alleges that the Ponzi scheme was "revealed" in October 2008. Am. Compl. ¶ 3. Thus, Ritchie had knowledge of the fraud at that time, and the two-year discovery window expired in 2010. Indeed, beginning in September 2008, Ritchie commenced multiple actions arising out of Petters' scheme. See Wilson Decl. Ex. 8. Because Ritchie issued its loans to Petters more than six years before filing suit, dismissal of this action is warranted. See Kottler v. Deutsche Bank AG, 607 F.

Supp. 2d 447, 460-61 (S.D.N.Y. 2009) (dismissing claims for aiding and abetting fraud and conspiracy to commit fraud as untimely, because the underlying fraud claim was also time-barred).

**II. Failure to State a Claim**

Even if this action was timely, the court finds that Ritchie has failed to state a claim for relief.[6]

**A. Aiding and Abetting Fraud**

To state a claim for aiding and abetting fraud under New York law, Ritchie must plead "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Aiding and abetting fraud claims must meet the heightened pleading requirements of Rule 9(b). Musalli Factory for Gold & Jewellry v. JPMorgan Chase Bank, N.A., 261 F.R.D. 13, 23 (S.D.N.Y. 2009). Therefore, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citation and internal quotation marks omitted).

---

[6] The parties primarily apply New York law in analyzing the substance of Ritchie's claims. Neither party argues that a different result would follow under Minnesota or Illinois law.

The court finds that Ritchie has failed to adequately plead the underlying fraud with particularity. Ritchie alleges that, in January 2008, an unnamed "agent for Petters" requested that "Ritchie" provide a loan so that Polaroid could pay down debt that it owed to JP Morgan and obtain working capital. Am. Compl. ¶¶ 46-47. The complaint does not identify the agent that solicited the financing, where any fraudulent statements were made, or to whom those statements were made.

Ritchie argues that the complaint satisfies the requirements of Rule 9(b) because it explains, in great detail, the fraudulent purchase order financing scheme and specific misrepresentations made in furtherance of that scheme. As noted by US Bank, this argument conflates the purchase order scheme with the specific fraud against Ritchie. Ritchie was asked to help Polaroid pay its debts to JP Morgan and to obtain working capital. It was not asked to purchase promissory notes in furtherance of the fraudulent diverting business. Therefore, the misrepresentations made to other investors in furtherance of the diverting business have no relevance to the specific fraud perpetrated on Ritchie.

Moreover, the court finds that Ritchie has not adequately pleaded knowledge on the part of US Bank. "To survive a motion to dismiss ... the [plaintiff] must allege facts giving rise to a strong inference of defendant's actual knowledge of the underlying harm[.]" Kirschner v. Bennett, 648 F. Supp. 2d 525, 544 (S.D.N.Y.

11

2009) (internal quotation marks omitted). Ritchie alleges US Bank knew that (1) there was no Lockbox Account as represented to investors, (2) incoming payments to the Collateral Account came from PCI rather than discount retailers, and (3) the Direct Payment System was illusory. Am. Compl. ¶¶ 29, 34, 39, 42, 44-45, 96, 98. Again, however, there is no indication that US Bank knew of the separate fraud that was committed against Ritchie. See Kirschner, 648 F. Supp. 2d at 545 (declining to equate defendant's knowledge of one fraud to its knowledge of an allegedly related scheme).[7] Dismissal of the aiding and abetting fraud claim is therefore warranted.[8]

**B. Fraudulent Conveyance**

Ritchie alleges that fraudulent conveyances occurred when Petters directed the transfer of Ritchie's funds from Petters or from PCI's account at M&I Bank to the accounts held by Petters-controlled entities at US Bank. Am. Compl. ¶¶ 76-85. To be liable for a fraudulent transfer under New York law, the defendant must be a transferee of the funds. See FDIC v. Porco, 552 N.E.2d 158, 159 (N.Y. 1990) (prohibiting recovery "against parties who ... were

---

[7] Ritchie's allegations regarding US Bank's substantial assistance are also unrelated to the Polaroid fraud and are therefore without merit. See Pl.'s Opp. Mem. at 19-20.

[8] Because Ritchie has not adequately pleaded the existence of the underlying fraud, dismissal of the conspiracy claim is also warranted. See Scala v. Sequor Grp., Inc., No. 94-0449, 1995 WL 225625, at *9 (S.D.N.Y. Apr. 14, 1995).

neither transferees of the assets nor beneficiaries of the conveyance"); Farm Stores, Inc. v. Sch. Feeding Corp., 477 N.Y.S.2d 374, 379 (N.Y. App. Div. 1984) (stating that, in the event of a fraudulent conveyance, a transferee "who was not a bona fide purchaser for fair consideration is liable to the creditor to the extent of the value of the money or property he or she wrongfully received" (citation omitted)). To be considered a transferee, the defendant must exercise "dominion and control" over the transferred assets. See In re Bruno Mach. Corp., 435 B.R. 819, 848 (Bankr. N.D.N.Y. 2010); In re Feaster, No. 12-12491, 2014 WL 7366031, at *3 (Bankr. S.D.N.Y. Dec. 23, 2014) (dismissing avoidance claim where alleged transferee held no authority to direct the transfer of a stock certificate).

The complaint alleges that Ritchie's loan proceeds were transferred either from Petters or from PCI's account at M&I Bank to accounts maintained at US Bank. Am. Compl. ¶¶ 4, 53, 60-61, 71, 77-80. Ritchie does not allege that these transfers were directed by US Bank, or that US Bank exercised dominion and control over the funds at any time. Indeed, Ritchie acknowledges that it was Petters who exercised dominion and control over the transferred funds. See Pl.'s Opp. Mem. at 24; Am. Compl. ¶¶ 1, 81, 84-85. As a result, dismissal of Ritchie's fraudulent conveyance claim is

13

also warranted.[9]

### C. Unjust Enrichment

To state a claim for unjust enrichment, Ritchie must show that "(1) [US Bank] was enriched, (2) at [Ritchie's] expense, and (3) that it is against equity and good conscience to permit [US Bank] to retain what is sought to be recovered." Old Republic Nat'l Title Ins. Co. v. Luft, 859 N.Y.S.2d 261, 262 (N.Y. App. Div. 2008). The complaint alleges that US Bank was unjustly enriched as a result of (1) the transfer of Ritchie's loan proceeds to the accounts maintained at US Bank, and (2) the substantial fees that US Bank received from the transfer of funds in and out of Petters' accounts. Am. Compl. ¶ 119-20. According to the complaint, the loan proceeds were transferred from accounts maintained at US Bank in order to fund the purchase order financing scheme, pay off debts to JP Morgan, subsidize the operations of Petters-controlled entities, and fund Petters' lifestyle. See id. ¶¶ 3, 48. Thus, US Bank did not benefit simply by facilitating the transfer of these funds to Petters and his affiliates. See Schroeder v. Capital One

---

[9] Ritchie argues that it is improper at the pleading stage to dismiss a fraudulent conveyance claim on the ground that the alleged transferee was a "mere conduit" of the transfer. See Steinberg v. Alpha Fifth Grp., No. 04-60899, 2010 WL 1332844, at *2 (S.D. Fla. Mar. 30, 2010) ("This issue presents a question of fact that cannot be considered on a motion to dismiss."). The complaint, however, does not include any allegations whatsoever that US Bank exercised dominion and control over the funds. See In re Feaster, 2014 WL 7366031, at *3 (dismissing avoidance claims where there was "no basis on the allegations of [the complaint] to deem the [defendant] a transferee").

14

Fin. Corp., 665 F. Supp. 2d 219, 226 (E.D.N.Y. 2009) ("[T]he only party that benefitted from the alleged wrongful transfer of funds was the unauthorized third party to whom the funds were transferred."). Moreover, although US Bank generated fees through transferring the funds at the direction of Petters, the complaint fails to show how those fees were generated at Ritchie's expense. See Mazzaro de Abreu v. Bank of Am. Corp., 525 F. Supp. 2d 381, 397 (S.D.N.Y. 2007) ("As the transfers were done at the behest of [a third party], Plaintiffs must look to [the third party] for recovery, not to Defendants[.]"). As a result, dismissal of Ritchie's unjust enrichment claim is warranted.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion to dismiss [ECF No. 15] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 11, 2015

                                          s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court